# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jason Bryan McSwain, Appellant.

Appellate Case No. 2023-001388

―――――――――

Appeal from Cherokee County
J. Derham Cole, Circuit Court Judge

―――――――――

Opinion No. 28263
Heard January 15, 2025 – Filed February 26, 2025

―――――――――

**AFFIRMED**

―――――――――

Elizabeth Anne Franklin-Best, of Elizabeth Franklin-Best, P.C., of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, all for Respondent.

―――――――――

**CHIEF JUSTICE KITTREDGE:** This case involves a facial challenge to the constitutionality of newly-amended portions of South Carolina's Sex Offender Registry Act (SORA).[1] In 2022, the General Assembly revised SORA to include a three-tier system for classifying sex offenders based solely on the severity of their

―――――

[1] *See generally* S.C. Code Ann. §§ 23-3-400 to -555 (2025).

underlying convictions. Those in each tier must register as sex offenders for a specific length of time corresponding to the tier in which they belong before they may seek removal from the registry, with no interim opportunity for either judicial review or an individual assessment of their likelihood to reoffend. Appellant Jason McSwain now contends the tier system and its mandatory wait times are arbitrary and unconnected to SORA's legislative purpose. As a result, McSwain argues the newly-amended provisions of SORA violate his right to substantive due process. The circuit court found, and we agree, that the amendments to SORA are rationally related to the government's legitimate interest in protecting the public. We therefore affirm.

## I.

To provide context for the facts of this case, we first set forth the relevant portions of SORA, including the impetus behind its modern evolution.

Initially, SORA required any person who had been convicted of an enumerated sex crime to register as a sex offender for life, regardless of his or her age or the relative severity of his or her offense, unless the conviction was reversed, overturned, or vacated. *Powell v. Keel*, 433 S.C. 457, 462–63, 860 S.E.2d 344, 347 (2021) (citing S.C. Code Ann. §§ 23-3-430, -460 (2007 & Supp. 2020)). At the time, SORA did "not provide any judicial review for registrants to demonstrate their individual risk of recidivism and seek removal from the registry." *Id.* at 463, 860 S.E.2d at 347.

Subsequently, in 2021, we held that the initial, mandatory imposition of sex offender registration following a conviction for a sex crime was rationally related to SORA's dual purposes: protecting the public from those with a high risk to recidivate and aiding law enforcement in investigating sex crimes. *Id.* at 465–66, 860 S.E.2d at 348; *see also* S.C. Code Ann. § 23-3-400 (setting forth the purposes of SORA). However, we found the lifetime registration requirement—which, at that time, lacked an opportunity for judicial review to assess an individual's risk of reoffending—was arbitrary and wholly unrelated to SORA's legislative purposes. *Powell*, 433 S.C. at 466, 860 S.E.2d at 348. Recognizing the development of a judicial review process was a matter best left to the General Assembly, we declined to set forth detailed prospective guidelines. *Id.* at 467–68, 860 S.E.2d at 349. Rather, we determined only that due process required hearings at which sex offenders were given the opportunity to demonstrate they no longer posed a risk to the public sufficient to justify their continued registration, and those hearings needed to be conducted with "reasonable promptness and meet standards of fundamental

fairness."[2]  *Id.* at 468, 860 S.E.2d at 349.

Responding to the Court's decision, in May 2022, the General Assembly amended SORA in such a manner that, while there remained a possibility of lifetime registration for all offenders,[3] earlier removal from the registry was also permitted. *See* S.C. Code Ann. §§ 23-3-462, -463.  In relevant part, SORA now includes a three-tier system for classifying sex offenders, with tier I offenders having committed the least serious crimes, and tier III offenders having committed the most serious crimes. *See id.* § 23-3-430(C).  Under the new tiered system, tier I and II offenders may apply with the South Carolina Law Enforcement Division (SLED) to be removed from the sex offender registry after a certain number of years as a registrant: for tier I offenders, fifteen years; and for tier II offenders, twenty-five years.  *Id.* § 23-3-462(A)(1)(a)–(b).  SLED must approve the application so long as the tier I or II offender (1) completed all of the sex offender treatment programs that were required; (2) was not convicted of failure to register in the previous ten years; (3) was not convicted of any additional sexual offenses after being placed on the registry; (4) paid a filing fee; and (5) waited either fifteen or twenty-five years, whichever is applicable to him or her.  *Id.* § 23-3-462(A)–(C) ("After successful completion of the requirements of this section, . . . SLED shall remove the offender's name and identifying information from the sex offender registry . . . .").  Notably, a tier I or II offender need not necessarily prove he or she has a low risk of reoffending in order to be removed from the registry; rather, he or she must merely satisfy the five statutory requirements outlined above, including registering as a sex offender for either fifteen or twenty-five years before applying for removal.[4]

---

[2] There, the plaintiff (Powell) was provided a hearing to assess his likelihood of reoffending after being registered for slightly less than ten years, which we found was sufficient to satisfy his right to substantive due process.  *Id.* at 468, 860 S.E.2d at 349–50.  Nonetheless, we noted the hearing afforded to Mr. Powell in that case was "by no means the only acceptable process" the General Assembly could choose to adopt.  *Id.* at 468, 860 S.E.2d at 350.

[3] *See* S.C. Code Ann. § 23-3-460(A).

[4] The State may object to the tier I or II offender's removal application at the end of the fifteen- or twenty-five-year period, in which case, "SLED shall not remove the offender's name from the sex offender registry."  *Id.* § 23-3-462(D).  Should that occur, there is an appeal process that requires the tier I or II offender to prove he or she is unlikely to reoffend.  *See id.* §§ 23-3-462(D)–(E), -463.

In contrast, tier III offenders must first wait thirty years before filing a motion for removal in the circuit court. *Id.* § 23-3-463(A)(2). A tier III offender must affirmatively establish by clear and convincing evidence that he or she is "no longer a foreseeable risk to reoffend and that it is in the interest of justice to grant the motion for removal from the requirement of registration." *Id.* § 23-3-463(F).

Emphasizing the importance of the tiered wait times, section 23-3-463(B) unequivocally provides that, if a registered sex offender submits a premature application for removal that is either not accepted or erroneously accepted by SLED, the offender is not eligible for a hearing regarding his or her risk to recidivate. *Id.* § 23-3-463(B). Moreover, the statute states a registered sex offender may not file a motion for removal from the registry with the circuit court until the appropriate time frame for each tier of offenses has elapsed (i.e., fifteen, twenty-five, or thirty years). *Id.*

## II.

Turning now to the facts of this case, in 2004, McSwain—a former teacher—pled guilty to two counts of criminal sexual conduct with a minor in the second degree (CSCM-2d) and one count of contributing to the delinquency of a minor related to his serial abuse of three of his students. After completing a term of imprisonment, McSwain registered as a sex offender as prescribed by SORA. As noted above, when he initially registered, SORA required he remain on the registry for life.

Following the 2022 amendments to SORA, McSwain was classified as a tier II offender due to his CSCM-2d convictions. That same year, he filed an application with SLED to be removed from the registry. SLED denied his application as premature, noting that tier II offenders were required to register for a minimum of twenty-five years before seeking removal, and McSwain had only been on the registry for approximately nineteen years at the time.

Ignoring sections 23-3-462 and 23-3-463, McSwain then filed a motion in the circuit court to be removed from the registry, arguing he no longer posed a danger to the community. In the alternative, McSwain argued section 23-3-462 was facially unconstitutional. Citing *Powell*, McSwain asserted substantive due process required that he and others similarly situated be afforded reasonably prompt hearings following their registration to discern whether they posed a continuing danger to the public and, thus, whether their ongoing registration was necessary. McSwain contended the requisite wait times were too long, and a categorical requirement to wait an allotted number of years before first being able to seek removal from the registry did not bear a reasonable relationship to any possible government interest.

Ultimately, the circuit court denied McSwain's motion, finding section 23-3-462 categorically prohibited his application for removal from the sex offender registry—let alone his motion filed in circuit court or actual removal—before the twenty-five-year time period elapsed.  As to the constitutional challenge, the circuit court held:

> The establishment of a process to satisfy constitutional due process in the deprivation of a liberty interest resulting from a criminal conviction is best left to the General Assembly and they have spoken on the issue in the context of this case. . . .  [T]his court has not been clearly convinced beyond a reasonable doubt that the enactments of the General Assembly applicable to this case are repugnant to any constitutional protections or rights of the appellant.

McSwain directly appealed the circuit court's decision to this Court.  *See* Rule 203(d)(1)(A)(ii), SCACR.

## III.

"This Court has a very limited scope of review in cases involving a constitutional challenge to a statute." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999).  We will presume the statute is constitutional and uphold the validity of the statute unless its repugnance to the constitution is clear beyond a reasonable doubt.  *Owens v. Stirling*, 443 S.C. 246, 260–61, 904 S.E.2d 580, 587–88 (2024) (citing, *inter alia*, *Thomas v. Macklen*, 186 S.C. 290, 305, 195 S.E. 539, 545 (1938) ("We are not unmindful that it is a grave matter to overturn, by judicial construction, an enactment of the General Assembly.  All presumptions are in favor of the power of that body to enact the law.  All considerations involving the wisdom, the policy, or the expediency of the Act are addressed exclusively to that branch of the State government.  But when the unconstitutionality of an Act is clear to this Court, beyond a reasonable doubt, then it is its plain duty to say so.") (cleaned up)).  The party challenging the validity of the statute bears the burden to prove it is unconstitutional.  *Id.* at 261, 904 S.E.2d at 588.

## IV.

The Due Process Clause of the United States Constitution provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  The clause provides both procedural and substantive due process protections.  The procedural component requires adequate and fair procedures be employed when governmental action infringes upon a protected life, liberty, or property interest.  *Mathews v. Eldridge*, 424 U.S. 319, 332

(1976).  The substantive component ensures that, regardless of the fairness of the procedures used, the government's reasons for depriving a person of a protected life, liberty, or property interest are not arbitrary and have, at a minimum, a rational relationship to a legitimate governmental purpose.  *Planned Parenthood S. Atl. v. State*, 438 S.C. 188, 250, 882 S.E.2d 770, 803 (2023); *Worsley Cos. v. Town of Mount Pleasant*, 339 S.C. 51, 56, 528 S.E.2d 657, 660 (2000).  When a legislative act is challenged under the Due Process Clause, and a fundamental right or suspect class is not involved, we require only that the act be reasonably designed to accomplish the legislative purpose.[5]  *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 140, 568 S.E.2d 338, 347 (2002); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

SORA's purposes are set forth in section 23-3-400, which states:

> The intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens. . . .
>
> The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses.  Statistics show that sex offenders often pose a high risk of re-offending.  Additionally, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the lack of information about these convicted offenders who live within the law enforcement agency's jurisdiction.

There is no question the State has legitimate interests in protecting the citizens of South Carolina from sexual offenders and aiding law enforcement in solving sex crimes.  *See Powell*, 433 S.C. at 465–66, 860 S.E.2d at 348; *In re Justin B.*, 405 S.C. 391, 408, 747 S.E.2d 774, 783 (2013); *State v. Dykes*, 403 S.C. 499, 507, 744 S.E.2d 505, 510 (2013); *Hendrix v. Taylor*, 353 S.C. 542, 550, 579 S.E.2d 320, 324 (2003); *State v. Walls*, 348 S.C. 26, 31, 558 S.E.2d 524, 526 (2002).

It is equally clear the tiered-registration system furthers the legislative purposes in ways the previous lifetime registration requirement did not.  As we explained in *Powell*, the former lifetime registration requirement was over-inclusive because it mandated the permanent inclusion of individuals with a low risk of reoffending,

---

[5] The parties agree rational basis review applies here.  *Cf. Millard v. Camper*, 971 F.3d 1174, 1185 (10th Cir. 2020) (noting no court has found a sex offender registration law implicates a fundamental right (collecting cases)).

thereby diluting its utility to the public and law enforcement. *Powell*, 433 S.C. at 466, 860 S.E.2d at 349. Now, however, with the adoption of the tiered-registration system, the General Assembly has tied an offender's relative risk to the public—as determined by the severity of his or her underlying crime(s)—to the length of time for which he or she must register prior to seeking removal. *Cf. Smith v. Doe*, 538 U.S. 84, 102 (2003) (noting Alaska's version of SORA "differentiates between [registration requirements for] individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense. *The broad categories, however, and the corresponding length of the [registration] requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective*." (emphasis added) (cleaned up)); *Hawker v. New York*, 170 U.S. 189, 197 (1898) ("Doubtless, one who has violated the criminal law may thereafter reform, and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application . . . ."). The time periods selected by the General Assembly, while lengthy, further SORA's legislative purposes, and McSwain has not established otherwise. *See Doe v. State*, 421 S.C. 490, 501, 808 S.E.2d 807, 813 (2017) (explaining appellate courts presume legislative acts are constitutional unless their repugnance to the constitution is clear beyond a reasonable doubt); *Hines v. Quillivan*, 982 F.3d 266, 275 (5th Cir. 2020) ("A classification may be underinclusive or overinclusive and yet survive rational-basis review. The Constitution does not require perfect policies to achieve a state's legitimate interests. When a legislature has a choice of means, each rationally related to its legislative purpose, it may constitutionally choose any of them. Its choice of one does not render the others irrational." (cleaned up)).

Notably, the current version of SORA largely mirrors the federal Sex Offender Registry and Notification Act (SORNA).[6] Both SORA and SORNA have three-tier systems for categorizing sex offenders, with tier I being the least serious offenders and tier III being the most serious.[7] Likewise, both SORA and SORNA set forth similar minimum periods of time for which each tier of offender must register before they can seek removal from the registry.[8]

---

[6] 34 U.S.C. §§ 20901–62 (2019 & Supp. 2024).

[7] *Compare* 34 U.S.C. § 20911(2)–(4), *with* S.C. Code Ann. § 23-3-430(C).

[8] *Compare* 34 U.S.C. § 20915, *with* S.C. Code Ann. §§ 23-3-462(A)(1)(a)–(b), *and id.* § 23-3-462(A)(2), *and id.* § 23-3-463(A)(2).

In fact, in addition to the federal government and South Carolina, a majority of states—twenty-six by our count—have enacted either identical or substantially similar tiered systems of classification and mandatory-minimum lengths of time for registration before permitting an application for removal from the registry. *See, e.g.*, Wayne A. Logan, *Database Infamia: Exit from the Sex Offender Registries*, 2015 Wis. L. Rev. 219, 221 (2015) ("[I]ndividuals typically remain on registries for a minimum of 10 and up to 40 years. *This is so regardless of* whether or not they have been convicted of another crime (sexual or otherwise) and *their future likelihood of recidivism.*" (emphasis added) (internal footnotes omitted)). More specifically, those additional twenty-six states require moderate to severe sex offenders (i.e., tiers II and III) to register for a minimum of twenty to twenty-five years before seeking removal from the registry.[9] Put simply, unlike its prior iteration, the newly-amended version of SORA is far from an outlier in terms of the national picture of sex offender registry requirements.

We therefore find SORA's tiered-registration system and corresponding mandatory-minimum time periods for registration are rationally related to SORA's legislative purposes. As persuasively explained by the New Mexico Court of Appeals,

> Presumably, the unfairness to any who might present evidence that they do not pose a significant risk of recidivism is, in the Legislature's view, outweighed by the risk that citizens may be harmed notwithstanding such evidence. SORNA's message is that no chance should be taken, even were a sex offender able to present evidence in an individualized hearing that he or she is integrateable into society and neither a recidivist nor a current danger, since the risk of harm to society, no matter what the evidence, is still too great if exceptions were permitted, a risk the Legislature simply refuses to take.

*State v. Druktenis*, 86 P.3d 1050, 1068 (N.M. Ct. App. 2004). McSwain has failed to overcome the presumption that the newly-amended version of SORA is

---

[9] *See* Restoration of Rights Project, *50-State Comparison: Relief from Sex Offender Registration Obligations*, Collateral Consequences Res. Ctr. (last updated Oct. 2022), https://ccresourcecenter.org/state-restoration-profiles/50-state-comparison-relief-from-sex-offender-registration-obligations/. These states include Arizona, California, Colorado, Delaware, Florida, Hawaii, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, Texas, Virginia, and Wyoming.

constitutional.[10]

## V.

In 2021, we held SORA's prior lifetime registration requirement was unconstitutional in part because the complete absence of judicial review made South Carolina's registry requirements "the most stringent in the country." *Powell*, 433 S.C. at 463, 860 S.E.2d at 347 (citing Logan*, supra*, at 225). The General Assembly responded by amending SORA to bring it in line with federal law and the approach taken by a majority of states. The current tiered system and corresponding time periods of required registration are reasonably designed to accomplish the legitimate interests the State has in protecting the public and aiding law enforcement in investigating sex crimes. We therefore find McSwain has failed to establish SORA violates his right to substantive due process. Accordingly, we affirm the decision of the circuit court.

---

[10] *Cf. Millard*, 971 F.3d at 1185 & n.13 (rejecting a substantive due process claim that Colorado's SORA (CSORA) created a presumption that a registered sex offender would reoffend, and explaining "CSORA easily passes th[e rational basis] test because . . . there is a rational connection between it and the government's interest in public safety"; "In the district court's words, 'there is a rational relationship between the registration requirements and the legislative purpose of giving members of the public the opportunity to protect themselves and their children from sex offenses.'"); *Ex parte Chamberlain*, 306 S.W.3d 328, 335 (Tex. App. 2009) ("And because [Texas's SORA's] notification provisions inform citizens that sex offenders are living in their community—in order that citizens may take necessary precautions—[it] is a rational means to further a legitimate state interest."), *vacated on other grounds*, 335 S.W.3d 198, 200 (Tex. Crim. App. 2011) (noting that an intervening change in the law "altered the legal landscape" and, therefore, a remand was required to consider the impact of the change on the appeal), *reaff'd*, 352 S.W.3d 121, 123–24 (Tex. App. 2011) (reaffirming and readopting the rationale in the initial opinion, and additionally noting, "The fact that [the sex offender] is not eligible at this time to pursue deregistration . . . does not create a violation of [his] substantive due process rights; it simply means that the legislature, . . . in consideration of the category of offense committed by [him], has determined that Texas's citizens should continue to be protected from the perpetrators of this type of sexual offense. . . . The determination of which offenses should be eligible for deregistration is a matter best left for the legislature . . . .").

**AFFIRMED.**

**FEW, JAMES, HILL and VERDIN, JJ., concur.**