FILED
United States Court of Appeals
Tenth Circuit

November 28, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

RAY NEAL CARNEY,

     Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
PUBLIC SAFETY,

     Defendant - Appellee.

------------------------------------------

NATIONAL ASSOCIATION FOR
RATIONAL SEXUAL OFFENSE LAWS;
OK VOICES; AMERICAN CIVIL
LIBERTIES UNION OF OKLAHOMA,

     Amici Curiae.

No. 16-6276

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:16-CV-00484-R)**
_____

Andrew D. Barr (Scott F. Llewellyn of Morrison & Foerster, L.L.P., with him on the brief), Denver, Colorado, for Plaintiff - Appellant.

Michael K. Velchik, Assistant Solicitor General (Justin P. Grose, Assistant Attorney General, with him on the brief), Office of the Attorney General, Litigation Division, Oklahoma City, Oklahoma, for Defendant - Appellee.

Brady R. Henderson, ACLU of Oklahoma Foundation, Oklahoma City, Oklahoma, for Amicus Curiae American Civil Liberties Union of Oklahoma.

John J. Korzen, Director, Wake Forest University School of Law, Appellate Advocacy Clinic, Winston-Salem, North Carolina, for Amici Curiae NARSOL & OK Voices.
_____

Before **KELLY**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Plaintiff-Appellant Ray Carney appeals from the district court's dismissal of his claims under the Eighth and Fourteenth Amendments. Carney v. Okla. Dep't of Pub. Safety, No. 5:16-CV-00484-R, 2016 WL 4250473 (W.D. Okla. Aug. 10, 2016). He also raises an additional First Amendment claim not considered by the district court. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm the district court's dismissal on the Eighth and Fourteenth Amendment claims; the First Amendment claim has been forfeited.

**Background**

Ray Carney, a state inmate appearing pro se, was convicted of sexually abusing a child in 2010. Upon his release in January 2018,[1] Mr. Carney will be required to register as an aggravated sex offender. Under Oklahoma law, this means he will have to acquire a driver's license that indicates he is a sex offender ("license requirement"). Okla. Stat. tit. 47, § 6-111(E)(1) (2017). Failing to obtain such a license results in cancellation, and continued use of a cancelled license is a misdemeanor. Id. § 6-111(E)(4).

---

[1] The district court found this case ripe despite the fact that Mr. Carney has yet to receive a sex-offender driver's license. We agree.

On August 10, 2016, the district court dismissed Mr. Carney's claims under the Eighth and Fourteenth Amendments. Mr. Carney now appeals from that order and makes an additional claim that the license requirement is unconstitutional under the First Amendment. Mr. Carney's notice of appeal was filed on September 15, 2016, six days after the 30-day deadline had lapsed.

## Discussion

### A. The Timeliness of the Appeal

The district court granted the government's motion to dismiss on August 10, 2016. Mr. Carney's notice of appeal was due 30 days thereafter on September 9. Fed. R. App. P. 4(a)(1)(A). Although the notice of appeal is dated September 9, it was not filed until September 15. On September 16, the clerk of court issued an order to show cause regarding the untimeliness of Mr. Carney's notice of appeal. It noted that the prison mailbox rule could save the untimely notice but that Mr. Carney had not yet fulfilled its requirements. Mr. Carney later declared under penalty of perjury that his notice of appeal was placed (in an envelope marked as "Legal Mail") in the prison mail drop on September 9 with prepaid postage. We exercise our discretion under Fed. R. App. P. 4(c)(1)(B) to permit the later filing of Mr. Carney's declaration and deem the appeal timely. See Fed R. App. P. 4(c)(1) advisory committee's note to 2016 amendment.

### B. First Amendment

Mr. Carney first argues that the license requirement violates the First Amendment because it is compelled speech. Supp. Aplt. Br. at 12–21. But "First Amendment" does

not appear anywhere in the proceedings below or in Mr. Carney's opening brief. The first time any mention of the First Amendment is made is in Mr. Carney's supplemental opening brief written by court-appointed counsel. Counsel argues that we should construe Mr. Carney's complaint liberally to include such a claim because he appeared pro se in the district court and sufficient factual allegations support such a claim. Aplt. Br. at 27. As we discuss below, this proves too much — Mr. Carney's arguments under the Eighth and Fourteenth Amendments were always clear and organized, making it apparent that he never meant to include a First Amendment argument in the court below.

We will only consider arguments not raised below "'in the most unusual circumstances.' We have consistently stated that 'a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory.'" United States v. Jarvis, 499 F.3d 1196, 1202 (10th Cir. 2007) (citation omitted) (quoting Lyons v. Jefferson Bank & Tr., 994 F.2d 716, 721 (10th Cir. 1993)). Although we construe Mr. Carney's pro se papers liberally, Estelle v. Gamble, 429 U.S. 97, 106 (1976), we cannot make arguments for him, Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994).

Mr. Carney argues that the facts he alleged in his district court petition for a declaratory judgment are adequate to form a First Amendment claim. Supp. Aplt. Br. at 26–27. Specifically, he refers to portions of his petition in which he states that the license requirement will force him to tell people about the crimes he has committed. 1 R. 15. But the petition indicates that these facts support his claims made under the Eighth and Fourteenth Amendments, not the First Amendment. Id. at 16 ("This brief will show that

the [license requirement] violates numerous constitutional provisions, namely that of cruel and unusual punishment and equal protection.")[2] At best, Mr. Carney has made a vague reference to a compelled-speech claim, and that is simply not enough. See Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989).

Mr. Carney argues in his supplemental brief that plain error can save any forfeited claims. See Supp. Aplt. Br. at 30–31. However, Mr. Carney includes this plain error argument under the discussion of the Eighth Amendment and Equal Protection claims — not the First Amendment. Mr. Carney also fails to provide any analysis for why plain error saves the forfeited claims. We have previously held that "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1131 (10th Cir. 2011) (emphasis added). Mr. Carney's plain error argument on the First Amendment claim is devoid of any analysis, which waives the argument in this court. See McKissick v. Yuen, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that when a party's "arguments were merely forfeited before the district court, [the] failure to explain . . . how they survive the plain error standard waives the arguments in this court."). For these reasons, Mr. Carney both forfeited his First Amendment claim below and waived the argument in this court.

---

[2] Mr. Carney also argues that he should have been given a reasonable opportunity to amend his pleadings. However, Mr. Carney did amend, when he made a motion to add an additional party, but simply did not include the First Amendment argument.

## C. Eighth Amendment

Mr. Carney contends that the license requirement constitutes cruel and unusual punishment in violation of the Eighth Amendment. The district court dismissed this contention for failure to state a claim. This court's review is de novo. Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Because the license requirement is not cruel and unusual, we need not consider whether it is penal in nature.[3]

A punishment is cruel and unusual if it is "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271 (1980). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Id. at 272. Indeed, the Supreme Court has upheld a life sentence for three theft-based felonies totaling a loss of about $230, id. at 265–66, a 25-year sentence for stealing golf clubs, Ewing v. California, 538 U.S. 11, 28 (2003), a life sentence for possessing 672 grams of cocaine, Harmelin v. Michigan, 501 U.S. 957, 961 (1991), and a 40-year sentence for possessing nine grams of marijuana, Hutto v. Davis, 454 U.S. 370, 370 (1982). The license requirement is certainly not more disproportionate than these examples. Moreover, there are no risks of incarceration or threats of physical harm. See United States v. Juvenile Male, 670 F.3d 999, 1010 (9th Cir. 2012)

---

[3] Although the Oklahoma Supreme Court found that the license requirement had a punitive effect, Starkey v. Okla. Dep't of Corr., 305 P.3d 1004, 1030 (Okla. 2013), we need not consider this question here because we find that the license requirement is not cruel and unusual.

(explaining that sex offender restrictions, though humiliating, do not constitute cruel and unusual punishment). Accordingly, given the high standard to establish cruel and unusual punishment, we find that the district court was correct in dismissing this claim.

### D. Fourteenth Amendment

Last, Mr. Carney contends that the license requirement is unconstitutional under the Fourteenth Amendment. He explains that he, as an aggravated sex offender, has received a harsher punishment than those who are similarly situated to him, namely non-aggravated sex offenders, and others who must register after committing various violent crimes and methamphetamine-related crimes. The district court dismissed this contention for failure to state a claim.

The Fourteenth Amendment ensures that states give their citizens "equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, states "must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997). Thus, "to assert a viable equal protection claim, [Mr. Carney] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). If he makes such a showing, we must apply rational basis review to the classification at issue because Mr. Carney is not part of a suspect class and is not alleging a fundamental-right violation. Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007). Under the rational basis standard, Mr. Carney's claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

- 7 -

Mr. Carney, an aggravated sex offender,[4] cannot state an equal protection claim because he is not similarly situated to ordinary sex offenders and others that are required to enroll in public registries. He also has not shown that he is being treated differently than other aggravated sex offenders. Thus, he cannot make an equal protection claim under the Fourteenth Amendment because he cannot satisfy the similarly situated requirement.

However, even if we were to construe the similarly situated requirement more broadly, Mr. Carney could not prevail under rational basis review. The question becomes whether Mr. Carney is being treated equally to others who must register to make their previous crimes known to the public. And in that sense, Mr. Carney is correct that he is not being treated equally; he has to have a sex-offender driver's license and they do not.

However, the Oklahoma legislature's findings provide a rational basis for the license requirement. Oklahoma enacted its Sex Offender Registration Act after making three findings: (1) "that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody"; (2) "that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety"; and (3) "that a system of registration will permit law enforcement officials to

---

[4] Aggravated sex offenders are those who have been convicted of the most serious offenses, including child sexual abuse, child sexual exploitation, incest, forcible sodomy, rape by instrumentation, rape, or lewd or indecent proposals or acts with a child under the age of 16. See Aplee. Br. at 17.

identify and alert the public when necessary for protecting the public safety." Okla. Stat. tit. 57, § 581(B). These findings support the license requirement.

Finally, Mr. Carney argues that heightened rational basis should apply to sex offenders because they make up an unpopular and underrepresented part of society. Supp. Aplt. Br. at 21–26. Under heightened rational basis review, courts focus "on the motivations that <u>actually</u> lay behind the laws" rather than "upon the various post-hoc rationalizations that <u>could</u> conceivably have justified the laws" as is done under regular rational basis review. <u>Bishop v. Smith</u>, 760 F.3d 1070, 1099 (10th Cir. 2014) (Holmes, J., concurring). Indeed, "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a <u>legitimate</u> governmental interest." <u>U.S. Dep't of Agric. v. Moreno</u>, 413 U.S. 528, 534 (1973). "[O]nce animus is detected, the inquiry is over: the law is unconstitutional." <u>Bishop</u>, 760 F.3d at 1103 (Holmes, J., concurring). If there is no blatant indication of animus, courts look to whether the law in question imposes "wide-ranging and novel deprivations upon the disfavored group; and . . . [whether the law strays] from the historical territory of the lawmaking sovereign just to eliminate privileges that a group would otherwise receive." <u>Id.</u> at 1100. For example, the Supreme Court has struck down a law where its legislative history included animus toward hippies. <u>Moreno</u>, 413 U.S. at 537.

Mr. Carney asserts that the license requirement was enacted out of animus toward aggravated sex offenders. But we do not find the sort of structural aberrations needed to trigger heightened rational basis review. The license requirement is not "wide-ranging"

or novel and does not serve "just to eliminate a privilege a group would otherwise receive." Bishop, 760 F.3d at 1100 (Holmes, J., concurring). More specifically, this law limits only a very narrow right: the right to a state identification that does not indicate a person is a sex offender. Thus, it does not "sweep broadly." Id. at 1108. It also cannot be seen as "unusual," because the license requirement does not stray from what state governments do each and every day: communicate important information about its citizens on state-issued IDs. See id.

We thus conclude that the license requirement is not an aberrational law indicative of hostile lawmaking. But we emphasize that our analysis focuses on the licensing requirement alone. We analyze whether to apply heightened rational basis on a case-by-case basis and therefore leave open the possibility that future laws targeting aggravated sex offenders — or even regular sex offenders — might warrant this heightened review. See id. at 1100–01 (explaining that we must explore challenged laws for structural irregularities to find animus). Because we do not apply heightened rational basis review, our analysis rests upon traditional rational basis review, and all that is required is a conceivable state of facts that could provide a rational basis for the license requirement. Id. at 1103. There are several rational reasons why Oklahoma enacted this law, principally among them the safety of the community. We therefore find that the license requirement is not unconstitutional under the Fourteenth Amendment.

AFFIRMED. We GRANT Mr. Carney's motion to proceed in forma pauperis and remind him that he remains obligated to continue making partial payments until the entire appellate filing fee is paid.