FILED
United States Court of Appeals
Tenth Circuit

June 7, 2018

Elisabeth A. Shumaker
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JEFFREY L. MCLEMORE,

Plaintiff - Appellant,

v.

BRENDA DARR; GARY FAY; AMBER
BLACK,

Defendants - Appellees.

No. 17-3129
(D.C. No. 5:15-CV-03202-JAR-DJW)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

Plaintiff Jeffrey L. McLemore, a former inmate of the Saline County Jail (SCJ) in Kansas, appeals the judgment entered against him by the United States District Court for the District of Kansas on his claims against various jail personnel regarding his treatment at the jail. He also appeals the denial of his motion to amend his complaint. We affirm.

Plaintiff's appeal relates only to claims arising out of an attack on him by fellow SCJ inmate David Summers on May 29, 2015. Because of a prior fight between the two in April, a housing restriction limited their contact. On May 29, Plaintiff was moved to a cell in Pod 2300, a maximum-security unit housing 12 inmates in individual cells.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Summers was housed in an adjacent cell; and, according to Plaintiff's complaint, on the day of the move SCJ staffer Amber Black heard Summers threaten Plaintiff and Plaintiff told Black several times that he feared Summers.

The move did not violate the housing restrictions, however, because officers at Pod 2300 are not supposed to let more than one Pod inmate out of his cell at any one time. For example, when medications are distributed to Pod 2300 inmates, an SCJ officer remotely unlocks the cell door for one inmate at a time so that he can get his medicine. The officer who opens the cell monitors the inmate's interaction with the SCJ nurse, then returns to his desk, while the prisoner returns to his cell and closes his cell door. Once the inmate's cell door is closed (as indicated by a light on the desk), the officer unlocks the next inmate's door.

Summers's attack on Plaintiff occurred during such medication distribution. When Plaintiff left his cell to get his medication, the cell door locked behind him. As a result, when he returned to his cell, the desk lights indicated that all the cell doors were locked even though he was not secure in his cell. Staff member Gary Fay, who was overseeing medicine distribution, unlocked the door to Summers's cell. Summers then attacked Plaintiff.

The Eighth Amendment may impose duties on prison officials to protect prisoners from violence and to provide them medical care. "To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm . . . and that the prison official was deliberately indifferent to his safety

. . . ." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (brackets and internal quotation marks omitted).  In this context, deliberate indifference means recklessness.  *See id.*  Similarly, a claim for denial of medical care requires a "sufficiently serious" medical need and deliberate indifference to that need.  *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014) (internal quotation marks omitted).  We address in turn the rulings challenged by Plaintiff on appeal.

Plaintiff first contends that the district court improperly dismissed his supervisory-liability claims against Brian Shea (a former captain at the Saline County Sheriff's Office (SCSO)), Brent Melander (a captain at SCJ), and Sheriff Glen Kochanowski.  We review de novo grants of dismissal based on a failure to state a claim.  *See Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1352 (10th Cir. 2017).  To state a § 1983 claim against a supervisor of one who allegedly violated a plaintiff's constitutional rights, the plaintiff "must show an affirmative link between [the supervisor] and [a] constitutional violation"; this requires proof of "(1) personal involvement; (2) causation; and (3) [the requisite culpable] state of mind."  *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016) (internal quotation marks omitted).  Plaintiff's complaint does not satisfy these requirements.  We agree with the district court's conclusion that "[P]laintiff does not allege personal involvement or participation by defendants Shea, Melander and Kochanowski.  He does not allege that they oversaw, directed or controlled the alleged misconduct.  He does not allege that these defendants created or implemented a policy that caused the alleged wrongful acts.  Also, plaintiff does not allege that [they] acted or failed to act with a culpable state of mind . . . ."  Order at 11, *McLemore v. Shea*, Case No. 15-3202-SAC-

3

DJW (D. Kan. Feb. 23, 2016) (February 2016 Order).  Dismissal of these claims was not error.

Plaintiff's second contention on appeal is that the district court erred in granting summary judgment to Black, Fay, and Brenda Darr (an SCJ staff member who knew of the prior fight between Plaintiff and Summers) on his claim under 42 U.S.C. § 1983 that they had acted with deliberate indifference to the risk of housing him near Summers. (The summary judgment was based largely on a *Martinez* report prepared by the defendants.  *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (approving district-court procedure of requiring prison officials named in civil-rights lawsuits to investigate and report to court on relevant facts at outset of case).)  First, relying on Kan. St. Ann. § 75-6104, which is part of the Kansas Tort Claims Act, he claims that the burden was on the defendants to establish their immunity from suit.  But this state statute has no bearing on Plaintiff's claim under the federal civil-rights statute.

Plaintiff then argues that summary judgment was improper because of factual disputes on two issues:  (1) whether there were safer housing options for him than being placed near Summers; and (2) whether Black, Darr, or Fay reasonably should have been aware, given past fights in Pod 2300, that a substantial risk of serious harm to Plaintiff existed as medicines were distributed on May 29, 2015.  Because Plaintiff did not raise the first issue below, he cannot press it now.  *See Carney*, 875 F.3d at 1351.  And in any event, the Constitution does not require prisons to employ the safest possible methods. On the second issue Plaintiff points to evidence suggesting that another SCJ inmate got into a fight in Pod 2300 in June 2015, and to a declaration purportedly from that inmate

4

discussing that fight and stating that he was aware of "numerous fights." But even if there had been prior fights in Pod 2300, Plaintiff has provided no evidence that Fay's opening Summers's cell door before Plaintiff got back in his cell was anything but accidental. Such accidental conduct does not show deliberate indifference.

Plaintiff's third contention is that the district court improperly dismissed his denial-of-medical-treatment claim against David Wallace (a corporal at SCJ) and Beth Komareck (an SCJ nurse). The district court did not actually dismiss the claim; what it did was deny a motion to amend the complaint to add the claim. The court said that the amendment would be futile. We review de novo a denial of a motion to amend on that ground. *See Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015).

The allegations purporting to support this claim are as follows: After the fight with Summers, Plaintiff was tending his wounds—including setting his own broken nose—when he encountered Wallace. Plaintiff told Wallace that he needed medical treatment for his nose. Wallace told Plaintiff that he (Wallace) would inform Komareck of Plaintiff's request. Plaintiff saw Komareck less than an hour later and told her that he needed help for his broken nose. Komareck responded that there was little she could do for his nose if he had already set it. Plaintiff received no further treatment for his injuries, which included "scratches, black eyes, bruises on [his] head and a contusion behind [his] ear." May 2016 Compl. at 6.

These allegations do not sustain a denial-of-treatment claim. Plaintiff fails to explain what more Wallace should have done. He said he would tell Komareck that Plaintiff wanted to see her, and she saw him within an hour. Also, Plaintiff does not

5

allege any harm from the delay or explain how Wallace's response demonstrates deliberate indifference. Likewise for Komareck, Plaintiff does not explain how Komareck deprived him of treatment for a "sufficiently serious medical need." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). After hearing that Plaintiff had set his own broken nose, Komareck allegedly told him that there was nothing more she could do for him. Plaintiff did not allege what more Komareck could have done or how he was injured by the failure to do those things. Nor does he explain how Komareck's response evinced deliberate indifference to his medical condition. *See id.*

We **AFFIRM** the judgment of the district court, **GRANT** Plaintiff's motion for leave to proceed without prepayment of costs and fees, and **DENY** his motion to file a supplemental brief concerning evidence irrelevant to the May 2015 incident.

Entered for the Court

Harris L Hartz
Circuit Judge