**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**May 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CHRISTOPHER D. HARRELL,

     Plaintiff - Appellant,

v.

JEFFREY SCOTT, Regional Medical
Director; NAPHCARE, for-profit
medical contractor; YESCARE, for-profit
medical contractor; DR. PHILIP ESKEW,
Faculty Medical Director; SETH
NORRIS, Warden, Wyoming Medium
Correctional Institution; EDNA CURRY,
Kitchen Supervisor, Wyoming Medium
Correctional Institution,

     Defendants - Appellees.

No. 25-8044
(D.C. No. 2:25-CV-00086-KHR)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Christopher D. Harrell, a Wyoming prisoner proceeding pro se, appeals the

district court's screening dismissal of his 42 U.S.C. § 1983 complaint.  Exercising

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND[1]

### A. *Original Complaint Allegations*

In late 2023, Mr. Harrell, incarcerated at the Wyoming Medium Correctional Institution, stopped taking medications that he thought were causing gastrointestinal pain and diarrhea. But his symptoms continued, so he sought medical treatment.

### 1. FODMAP Diet

In February 2024, defendant Philip Eskew, a physician, responded to Mr. Harrell's treatment request. Dr. Eskew worked for Defendant YesCare, a health care provider under contract with the Wyoming Department of Corrections ("DOC") to provide medical care to prisoners. He ordered the prison kitchen to put Mr. Harrell on a special diet known as FODMAP. Mr. Harrell spent the next several months "go[ing] through the 'trial and error' phase of attempting to add the food that FODMAP removed, one item at a time, to increase the foods available to [him]." R. at 10, ¶ 16.

Mr. Harrell developed a list of foods that either did or did not cause pain. He shared this list with Defendant Edna Curry, the kitchen supervisor at Wyoming

---

[1] For purposes of this appeal, we accept as true Mr. Harrell's allegations about the events that led up to this lawsuit. *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff.").

Medium, and Defendant NaphCare, which replaced YesCare as the prison system's contracted medical provider in mid-2024.  Ms. Curry then posted a list in the kitchen specifying the foods to serve and not serve to Mr. Harrell, but her list differed from the list Mr. Harrell gave her.  For example, it included foods to serve that Mr. Harrell had identified as causing his pain.

Mr. Harrell grieved Ms. Curry's failure to follow his list, apparently to no avail.  In October 2024, Ms. Curry forbade Mr. Harrell from speaking directly to the medical diet cooks, on pain of a conduct violation report ("CVR").[2]  Three times in November 2024, Mr. Harrell went 24 hours between meals because the kitchen served him food he had identified as causing pain and refused to provide a replacement meal.

## 2.  Efforts to Seek Diet Help

Mr. Harrell already had a lawsuit pending in the United States District Court for the District of Wyoming about a different medical issue.  In late November 2024, he filed a motion to order the DOC to provide him foods he could safely eat.

On January 8, 2025, with his district-court motion still pending, Mr. Harrell had a long discussion with Defendant Jeffrey Scott, a NaphCare physician who supervises NaphCare's services in Wyoming prisons, and Brian Church, a NaphCare physician newly assigned to Wyoming Medium.  By this point, due to administrative

---

[2] A CVR is the document that commences a prison disciplinary proceeding against an inmate.

3

errors, Mr. Harrell had missed two colonoscopy appointments intended to help diagnose his condition. Dr. Scott and Dr. Church decided not to reschedule the colonoscopy until Mr. Harrell had tried certain medications for 30 days.

At about this same time, Mr. Harrell sent a written request to Defendant Seth Norris, warden of Wyoming Medium, asking that peas be removed from his diet because they were causing pain.

On January 10, 2025, while the request to Warden Norris was still pending, the district court denied Mr. Harrell's motion for injunctive relief because the alleged wrongs and the requested relief did not relate to the claims alleged in that lawsuit. "Hours after [the district court] issued its ruling, Mr. Harrell was called to medical where [a NaphCare nurse] informed Mr. Harrell that he was being removed from the FODMAP diet." R. at 12, ¶ 23. As he spoke with that nurse, Dr. Church entered the room and joined the conversation. Mr. Harrell explained that foods for sale in the prison canteen were just as harmful to him as the foods usually served from the kitchen. Dr. Church said that if Mr. Harrell would submit a formal health services request, he would authorize Mr. Harrell to order canteen items from an approved outside vendor. Mr. Harrell submitted the request but never heard back.

### 3. Open Letter

Mr. Harrell was not immediately removed from the FODMAP diet, but the impending removal prompted him to write an "open letter" dated January 13, 2025. R. at 13, ¶ 24. It was addressed to the governor and attorney general of Wyoming, Director of the DOC Daniel Shannon, and the NaphCare legal department. He also

4

placed a copy directed to Dr. Scott in the box at his prison where inmates submitted requests for health services.

Mr. Harrell's open letter criticized the handling of his gastrointestinal issues and explained that ending his FODMAP diet would "result in more weight loss [because] the biggest food that causes me problems is wheat (gluten).  Since inmates are fed so much gluten as it is a cheap calorie to feed us, I would be missing lots of calories by 'eating around troublesome foods.'"  R. at 68.  He further stated that his weight had dropped from 213 to 180 pounds between December 2022 and December 2024, on account of insufficient diet.  He explained:

> Because I am continuously forced to eat food served in the kitchen that does not comply with FODMAP that causes me tremendous amounts of GI pain, diarrhea, cramps, burning sensations, bloody poop, etc., I am forced to decide how much pain I would like to endure to acquire enough calories to survive.

R. at 69.  He added that the kitchen staff was unhelpful and antagonistic when he asked for replacement food items.  He asked that the kitchen be required to serve him the FODMAP diet, given it was the only diet he could consistently eat.  He also threatened to file a lawsuit, attaching the first page of his intended complaint, which contained a long caption naming Dr. Scott and others as defendants.

On January 27, Warden Norris instructed Ms. Curry to remove peas from Mr. Harrell's diet.

5

### 4. Response to Open Letter

On January 31, Mr. Harrell received a written response to the open letter from Dr. Scott, as follows:

> Your FODMAP diet is being discontinued.  Your draft of Civil Rights Complaint was reviewed.  You indicated you have identified your troubling foods with the biggest issue being Gluten.  Gluten is not a sugar[,] it is a protein. FODMAP is not intended to be a long-term diet.  It is used for 2-6 week[s] to identify irritating foods[,] which you have successfully done.  You also indicated your weight loss[,] which you have had some[,] and is likely due to prolonged use of the FODMAP diet.  It is therefore not medically indicated you continue this.  You will be placed on a Gluten free diet going forward.  You have been referred to a GI doctor and further medication to try and help alleviate your symptoms is up to you.

R. at 73.

Mr. Harrell grieved Dr. Scott's decision.  Denied at the initial levels, in mid-February his grievance reached Warden Norris, who denied it.  In early March Mr. Harrell appealed to the final level—DOC Director Shannon.

### 5. March Weight Loss

Around this time, Warden Norris instructed the medical department to check Mr. Harrell's weight weekly.  On March 12, Mr. Harrell was called down to medical. Dr. Scott was there, and Mr. Harrell told him, "[Y]ou are starving me to death," and described himself as "losing weight like a cancer patient."  R. at 17, ¶ 36.  Dr. Scott responded that this was Mr. Harrell's "opinion" and said, "[Y]ou do not know what foods are causing you pain."  *Id.*

6

Mr. Harrell weighed 186 pounds on January 31, 2025, the day Dr. Scott ended his FODMAP diet. On March 12, he weighed 168 pounds. "Multiple staff members [had] questioned Mr. Harrell directly about his drastic and sudden loss of weight . . . ." R. at 32, ¶ 88.

On March 18, Mr. Harrell finally visited an outside gastrointestinal specialist, who ordered a colonoscopy, an endoscope, blood and stool samples, and images. By this time, Mr. Harrell had been taking the medication prescribed by Dr. Scott and Dr. Church for close to 50 days, as opposed to the 30 days he was originally told he would need to take it. His symptoms did not improve.

On March 20, when Mr. Harrell went to dinner, the kitchen told him NaphCare had removed him from the gluten-free diet, so he was now expected to eat whatever was being served to the general population. The kitchen told him that NaphCare would give him an explanation, but he never received one. Mr. Harrell says it was Dr. Scott's decision to end his gluten-free diet. The following day, March 21, at Mr. Harrell's weekly weigh-in, he was down to 164 pounds.

### 6. Mailing the Complaint

Director Shannon had until April to response to Mr. Harrell's final-level grievance. On March 25, fearing he could starve to death in the meantime, Mr. Harrell mailed the complaint that began this lawsuit. He asserted the following causes of action, often collectively against the Defendants Dr. Scott, NaphCare, Dr. Eskew, YesCare, Warden Norris, and Ms. Curry:

7

- denial of medical care—failure to treat his gastrointestinal condition— in violation of the Eighth Amendment;

- denial of an adequate diet, in violation of the Eighth Amendment;

- retaliation based on the open letter, in violation of the First Amendment; and

- violation of Wyoming criminal law.[3]

## 7. Restoration of FODMAP Diet

On March 26, while his complaint was still in the mail, Mr. Harrell was unexpectedly transported for an appointment with a gastrointestinal surgeon. The surgeon explained what would happen at an upcoming colonoscopy and asked the DOC to reinstate the FODMAP diet at least until the colonoscopy. Later that day, after returning from the doctor visit, Mr. Harrell met with a dietitian who ordered that he receive only the foods he knows he can eat, including double portions to address the weight loss. The kitchen then began serving him the FODMAP diet again. Mr. Harrell quickly sent a "notice of full disclosure" to the district court, describing these developments. R. at 85.

### B. *Proposed Amended Complaint*

In mid-May 2025, before the district court had acted on Mr. Harrell's original complaint (other than minor procedural orders), Mr. Harrell submitted a motion to amend and a proposed amended complaint, which would add six defendants.

---

[3] The district court distilled those claims from Mr. Harrell's allegations. Mr. Harrell does not contest this listing.

It alleged that Dr. Church; "RN (unknown) Wyse," a NaphCare nurse who worked as "the Facility Health Service Administrator" at Wyoming Medium, Suppl. R. at 10, ¶ 10 (emphasis removed); and Director Shannon (1) could have addressed Mr. Harrell's nutrition or medical needs but did not or (2) retaliated against him for his open letter.

The proposed amended complaint named Zachary Hiegel, another kitchen supervisor at Wyoming Medium. It alleged that, on November 22, 2024, Mr. Harrell received a dinner tray with fried cabbage and ham. He cannot eat cabbage and felt uncomfortable eating around it due to cross-contamination. He asked Mr. Hiegel for a replacement meal. Mr. Hiegel responded that Mr. Harrell was "'shit outta luck' because 'all the cooks just left.'" Suppl. R. at 44, ¶ 113. Mr. Harrell's diet sheet, posted in the kitchen, "specifically said 'no cabbage.'" *Id.* at 52, ¶ 137. Mr. Harrell "pointed to his diet sheet and said, '[O]bviously you can't fucking read.'" *Id.* at 45, ¶ 115. Mr. Hiegel issued a CVR against Mr. Harrell for violating a prison regulation forbidding profanity directed at another. Mr. Harrell was convicted of the CVR and fined $10.

The proposed amended complaint also named Robert Babbitt, a lieutenant at Wyoming Medium. It alleged that on January 30, 2025, a prison nurse gave Mr. Harrell four stool sample cups and asked that they be returned as soon as possible for testing. He delivered the first sample to the medical department on February 1. He returned on February 2 to deliver the second sample. Lieutenant Babbitt was on duty. He would not let Mr. Harrell enter and refused Mr. Harrell's request to have a

9

nurse come out to the hallway to retrieve the sample. Mr. Harrell "left the sample cup in a biohazard bag outside the medical door for a nurse to retrieve later." *Id.* at 29, ¶ 65. Later that day, Mr. Harrell was served with a CVR filed by Lieutenant Babbitt, claiming Mr. Harrell had threatened to throw the sample on the floor and had no permission to be near medical at that time. *Id.* at 30, ¶ 66. The prison acquitted Mr. Harrell based on security camera footage of the incident. Mr. Harrell claims that Lieutenant Babbitt's CVR was retaliation for exercise of his Eighth Amendment right to seek medical care.

Finally, the proposed amended complaint named the DOC as a defendant, claiming the prison regulation about profanity violates the First Amendment and that its application to him was conscience-shocking in violation of substantive due process. Mr. Harrell also alleged that the DOC "implements a policy statement and decision in every grievance filed against its hired for-profit medical companies that says they trust the expertise of them," *id.* at 69, ¶ 179, so the DOC was liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for YesCare's and NaphCare's constitutionally inadequate medical care.

## C. *Dismissal under 28 U.S.C. § 1915A(b)(1)*

When a prisoner seeks redress against a governmental entity or an officer or employee of a governmental entity, the district court must screen the complaint and dismiss any part that is frivolous or malicious or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(a), (b)(1).

The district court screened Mr. Harrell's claims, treating the original and proposed amended complaints as one. First, it dismissed the nutrition and medical care claims because the allegations failed to show that prison officials were deliberately indifferent and damages were speculative.[4] Second, it dismissed the retaliation claim because the allegations were conclusory. Third, it dismissed his challenge to the regulation restricting obscene language as within the DOC's latitude in the prison context and relatedly said Mr. Harrell had failed to plausibly allege that Mr. Harrell's language substantially motivated Mr. Hiegel's conduct. Fourth, it dismissed the claim against Lieutenant Babbitt because the allegations did not show he consciously disregarded a known risk to Mr. Harrell's health.

Taking these rulings together, the district court dismissed the original complaint under 28 U.S.C. § 1915A(b)(1) for failure to state a claim and denied Mr. Harrell leave to amend as futile. This appeal timely followed.

## II.  DISCUSSION

Like the district court, we treat the original and amended complaints as one and address whether they state a claim as to each defendant. *See Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022).

---

[4] The court dismissed the nutrition claim as moot as to injunctive relief because the prison had restored Mr. Harrell to the FODMAP diet.

11

### A. *Standard of Review*

We review de novo a district court's dismissal of a complaint under § 1915A(b)(1) for failure to state a claim. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009); *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001). We also review de novo a district court's conclusion that leave to amend would be futile. *See Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1021 (10th Cir. 2022).

When a district court dismisses a complaint under § 1915A(b)(1) for failure to state a claim, and when a court denies leave to file an amended complaint as futile, we ask on appeal whether the complaint or amended complaint could survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (establishing that Rule 12(b)(6) standard applies to materially identical screening language in 28 U.S.C. § 1915(e)(2)(B)(ii)); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").

Under the Rule 12(b)(6) standard, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Mr. Harrell is pro se, we will construe his filings liberally, but we do not make arguments for him. *See Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1351 (10th Cir. 2017).

## B. *Deliberate Indifference and Retaliation*

Mr. Harrell's amended complaint attempts to allege claims for deliberate indifference to nutritional and medical needs and First Amendment retaliation. The claims are common to most defendants, so we provide background law on both types of claims and apply it to the allegations against each defendant.

## 1. Legal Background

### a. *Deliberate indifference to nutritional and medical needs*

Mr. Harrell's Eighth Amendment claims for denial of adequate nutrition and medical care substantially overlap, so we address the applicable legal standard for both.

The Eighth Amendment requires "prison officials to provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations omitted).[5] "We have long held [this provision] requires prison officials to provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates.'" *Womble v. Chrisman*, 173 F.4th 1186, 1198 (10th Cir. 2026) (quoting *Ramos v. Lamm*, 639 F.2d

---

[5] The Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 666 (1962).

559, 570–71 (10th Cir. 1980)); *see also Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("A prison must provide adequate food . . . to inmates, and the food must be nutritionally adequate." (citation and quotations omitted)). "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (quotations omitted).

Mr. Harrell's inadequate-nutrition and lack-of-medical-care claims coincide because the latter is based on an alleged failure to provide an adequate diet.[6] *See Scinto v. Stansberry*, 841 F.3d 219, 233–34 (4th Cir. 2016) (in the case of a diabetic prisoner, simultaneously analyzing adequate nutrition and the need for a medical diet); *Santiago v. Leik*, 508 N.W.2d 456, 461 (Wis. Ct. App. 1993) (stating that if a prisoner "suffers from a serious medical condition, and treatment of the condition includes adequate nutrition," then "deliberate indifference in failing to provide that nutrition is an eighth amendment violation"); *see also Womble*, 173 F.4th at 1195–99 (analyzing an inadequate-nutrition claim under the deliberate indifference standard).

For both the nutrition and medical claims, "an inmate must allege and prove an objective component and subjective component associated with the deficiency" claimed. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component

---

[6] *See, e.g.*, Aplt. Opening Br. at 27, ¶ 64 (Harrell describing himself as having "a medical condition," and therefore "being on a medical diet that eliminated the foods that are known to cause [him] pain, bloody stools and diarrhea" (citation omitted)); R. at 28, ¶ 69 (accusing defendants of "starving [him] by denying him adequate nutrition that complies with his medical condition").

examines whether the alleged medical condition or harm was sufficiently serious to be cognizable, while the subjective component analysis considers whether the defendant knew of and disregarded the serious risk to the inmate's health." *Johnson v. Sanders*, 121 F.4th 80, 88 (10th Cir. 2024) (citation and quotations omitted). Also, "[a] plaintiff must allege factual causation—i.e. 'but for' causation—in order to state a claim under § 1983." *Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000).[7]

### b. First Amendment retaliation

"[T]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).[8] To state a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that

---

[7] Mr. Harrell also claims the defendants' acts and omissions were a conscience-shocking violation of substantive due process. But the Supreme Court has said that "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Huff v. Reeves*, 996 F.3d 1082, 1085–86, 1091–92 (10th Cir. 2021) (holding that a bank robber's hostage, who was shot by police because they mistook her for the suspect, must pursue her excessive force claims under the Fourth Amendment, not through substantive due process).

[8] The First Amendment applies to the States through the Fourteenth Amendment. *See Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 470 (2025).

the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted); *see Parkhurst v. Shannon*, 172 F.4th 1176 (10th Cir. 2026).

## 2. Analysis

The amended complaint's allegations are sufficient to satisfy the objective component of the nutrition and medical care claims,[9] so we focus on the subjective component and causation. On the retaliation claim, it plausibly alleges that Mr. Harrell engaged in protected activity that the defendants' actions would chill,[10] so we focus on the defendants' motivations. The following addresses the complaint's sufficiency as each defendant.

---

[9] "The objective component [of a deliberate indifference claim] is met if . . . [the medical need] has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The district court concluded Mr. Harrell had adequately alleged the objective component. We agree. Mr. Harrell was receiving medical care for his gastrointestinal problems, which is arguably a treatment-mandating diagnosis from a physician. *See id.* He also alleged significant weight loss in a relatively short time period. At the pleading stage, this is enough to establish a condition that even a lay person would recognize as something needing medical attention. *See id.*

[10] Mr. Harrell's open letter qualifies as a "petition [to] the Government for a redress of grievances," U.S. Const. amend. I. *See also Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (holding that a prisoner had stated a claim for First Amendment retaliation based on "filing specific grievances against Defendants"). Also, the alleged withdrawal of a medically necessary diet satisfies the second element of the retaliation claim.

16

*a. Dr. Scott*

Mr. Harrell alleges that after he talked for 90 minutes about his needs with Dr. Scott and Dr. Church on January 8, 2025, and, after distributing his open letter, Dr. Scott took him off the FODMAP diet, substituted a gluten-free diet, and then took him off the gluten-free diet in March 2025. Mr. Harrell adequately pled Dr. Scott's knowledge that gluten was among the foods he cannot eat and disregarded his dietary needs by taking him off the gluten-free diet.

On the retaliation claim, the amended complaint points to Dr. Scott's response to the open letter: "Your FODMAP diet is being discontinued. Your draft of Civil Rights Complaint was reviewed," R. at 73, which, combined with the March 2025 removal from the gluten-free diet, permits a reasonable inference that Dr. Scott acted with a retaliatory motive.

Mr. Harrell has adequately pled his nutrition/medical care deliberate indifference claim and retaliation claim against Dr. Scott.

*b. Dr. Church*

Mr. Harrell alleges that when he told Dr. Church about the lack of appropriate food for him in the prison cafeteria and canteen, Dr. Church said he would authorize him to order special canteen foods if Mr. Harrell submitted a formal request. Mr. Harrell alleges he submitted the request and Dr. Church never answered it. These allegations may have been enough for knowledge and reckless disregard, but Mr. Harrell does not adequately plead causation given that Dr. Scott, Dr. Church's supervisor, decided to take Mr. Harrell off the FODMAP and gluten-free diets.

Because the amended complaint does not plausibly allege Dr. Church caused Mr. Harrell's injuries, it fails to plausibly plead a deliberate indifference or retaliation claim against Dr. Church.

### c. *Warden Norris*

In the week or two after Dr. Scott cancelled the FODMAP diet, Warden Norris ordered that Mr. Harrell have weekly weigh-ins and told Mr. Harrell that he was "speaking with medical daily to ensure [Mr. Harrell was] getting care." R. at 19, ¶ 42 (quotations omitted). Rather than deliberate indifference, Warden Norris took steps to address Mr. Harrell's health. The district court thus appropriately dismissed the deliberate indifference claim against him. It also properly dismissed the retaliation claim against him because the open letter was not addressed to him, Mr. Harrell does not allege he gave the letter to the warden, and Dr. Scott decided to end the FODMAP diet.

### d. *Nurse Wyse*

NaphCare Nurse Wyse was the health services administrator at Wyoming Medium. She allegedly intercepted some of Mr. Harrell's health service request (HSR) forms directed to Dr. Church. Mr. Harrell claims she "is liable for rejecting Mr. Harrell's HSR's, and for refusing to answer the questions Mr. Harrell asked in them when she did accept them. When Defendant Wyse did answer the questions, she was extremely rude and made false allegations in them." Suppl. R. at 70, ¶ 182. But the amended complaint lacks allegations to show how Nurse Wyse could have caused Mr. Harrell's alleged harm, especially when the allegations do not show that Dr. Church could have acted to prevent his injuries. Mr. Harrell thus has not pled a plausible claim against Nurse Wyse.

18

###### e. NaphCare

The amended complaint alleges that NaphCare, which employs Dr. Scott, Dr. Church, and Nurse Wyse, is liable for all the medical decisions that contributed to his injuries. Assuming NaphCare can be sued under *Monell*, "a private actor [acting under color of state law] cannot be held liable *solely* because it employs a tortfeasor—or, in other words cannot be held liable under § 1983 on a *respondeat superior* theory." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (ellipsis and quotations omitted). Mr. Harrell therefore fails to plead a plausible claim against NaphCare.

###### f. Ms. Curry

Mr. Harrell alleges that, from February 2024, when Dr. Eskew put Mr. Harrell on the FODMAP diet, through January 2025, when Dr. Scott ended that diet, kitchen supervisor Curry knowingly served him food outside his prescribed diet, was unwilling to substitute for those foods, and forbade him from asking the cooks to substitute foods. She allegedly did this despite many conversations with and written communications from Mr. Harrell about his dietary problems, including her statement to him in October 2024 that she would not serve foods to Mr. Harrell that caused him pain. This plausibly alleges a deliberately indifferent denial of nutritional care.

Mr. Harrell fails to state a claim against Ms. Curry for retaliation because he does not allege she knew about the open letter and, in any event, Dr. Scott made the decision to end the FODMAP diet.

19

g. *Director Shannon*

Mr. Harrell's allegations about Director Shannon center on two matters. The first concerns Mr. Harrell's grievance about Lieutenant Babbitt's issuing a CVR when Mr. Harrell left his stool sample outside the medical department. The amended complaint alleges that Director Shannon's written responses initially accepted Lieutenant Babbitt's version of events but later recognized that Mr. Harrell was not at fault. We fail to see how this relates to deliberate indifference.

Second, Director Shannon allegedly "signed the contracts that hired everyone else named [in this lawsuit]," meaning he "is responsible for Mr. Harrell's health and well-being, and failed miserably by allowing Mr. Harrell to be starved for 54 days." Suppl. R. at 71, ¶ 187. "Under § 1983," however, "government officials are not vicariously liable for the misconduct of their subordinates," *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006), and "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation," *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Mr. Harrell's allegations thus do not plausibly allege deliberate indifference against Director Shannon.

Mr. Harrell fails to allege retaliation against Director Shannon. Although the open letter listed him as an addressee, the amended complaint lacks any non-conclusory allegations that Director Shannon acted based on the open letter. Again, Mr. Harrell accuses Dr. Scott of ending the FODMAP diet in retaliation for the letter. He does not explain how anyone else participated or took further retaliatory action.

20

### C. *Discrete Incidents*

The amended complaint alleges claims arising from discrete incidents against (1) Mr. Hiegel and the DOC and (2) and Lieutenant Babbitt.

### 1. **Mr. Hiegel**

The amended complaint attempts to allege a First Amendment claim based on Mr. Harrell's CVR conviction and $10 fine for using profanity against Mr. Hiegel after Mr. Hiegel used profanity when refusing to prepare a FODMAP-compliant diet for Mr. Harrell. But as the district court correctly pointed out, the First Amendment provides narrower protection in the prison context. *See Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Mr. Harrell offers no legal authority for his argument that his claim should survive because of Mr. Hiegel's language. And his reliance on the George Carlin "dirty word" case, *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 751–55 (1978), is misplaced. The prison regulation forbids "[s]ubjecting *another person* to abusive actions, obscene language or gestures." Suppl. R. at 47, ¶ 121 (emphasis added) (quotations omitted). Mr. Harrell thus has not pled a claim against Mr. Hiegel. [11]

---

[11] Mr. Harrell's challenge to the profanity regulation against DOC fails for the same reason.

**2. Lieutenant Babbitt**

Mr. Harrell alleges that Lieutenant Babbitt interfered with his medical care. The amended complaint recounts that after Mr. Harrell left stool samples in a biohazard bag outside the medical department, Lieutenant Babbitt wrote him up in a CVR for throwing the sample on the floor and for being in that part of the prison without permission. Although the district court dismissed this claim for lack of harm because the stools were still submitted, we affirm dismissal because the amended claim lacks allegations that Lieutenant Babbitt acted with knowledge of or indifference to a serious medical need. Because his allegations are conclusory, we also affirm dismissal of Mr. Harrell's claim that Lieutenant Babbitt wrote him up in retaliation for attempting to obtain medical care.

**D. *Remaining Defendants***

Mr. Harrell attempts to allege claims against YesCare, Dr. Eskew, and the DOC (as it relates to Mr. Harrell's *Monell* claim).

**1. YesCare**

YesCare provided medical care at Wyoming Medium until mid-2024. Mr. Harrell's only specific allegation about YesCare relates to late 2023, when he stopped taking medications that he thought were upsetting his stomach but the stomach problems did not go away. He then asked to see a gastrointestinal specialist but "was denied . . . by Defendants YesCare and [the DOC]." Suppl. R. at 14, ¶ 21. Mr. Harrell does not say who denied the request, whether YesCare or the DOC was the final decisionmaker, what reasons were given, or how he was injured. Assuming YesCare can

22

be sued under *Monell*, he nonetheless fails to allege deliberate indifference against YesCare.[12]

## 2. Dr. Eskew

YesCare employee Dr. Eskew put Mr. Harrell on the FODMAP diet in February 2024. That is the only specific allegation Mr. Harrell makes against him. The amended complaint otherwise lumps him together with other defendants without explaining his connection to the alleged wrongful acts. Mr. Harrell therefore fails to state a claim against Dr. Eskew.

## 3. Department of Corrections

Mr. Harrell says that the DOC is liable for damages under *Monell* because it has a policy of responding to grievances about medical care by stating it trusts the expertise of its contracted providers. But Mr. Harrell cannot bring a § 1983 *Monell* claim against the DOC because "a State is not a person within the meaning of § 1983," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989), nor are "entities that are considered 'arms of the State,'" *id.* at 70. Wyoming statutes say that the DOC is part of "Wyoming state government," Wyo. Stat. Ann. § 9-2-2012(a), and its director is "appointed by the

---

[12] Later in the amended complaint, Mr. Harrell alleges that "YesCare is liable for denying Mr. Harrell the ability to see a GI specialist, the ability to order canteen that will not hurt him, and the ability to perform [a food allergy test known as] the Everlywell test—even at Mr. Harrell's expense." Suppl. R. at 70, ¶ 184. We previously addressed the claim regarding the GI specialist. As to the other two claims, nothing in the complaint alleges a connection between YesCare and these denials. They therefore do not state a claim for relief.

governor," *id.* § 9-2-2012(b). Thus, Mr. Harrell has failed to allege a *Monell* claim for damages against the DOC.

In the district court, Mr. Harrell also asked for injunctive relief against the DOC. The district court ruled that the dispute with DOC was moot because he had been reinstated to the FODMAP diet. Mr. Harrell does not challenge the district court's mootness reasoning, so we deem the issue waived and do not reach it. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived."). In this light, the district court correctly dismissed the claims against the DOC.[13]

### E. *Claims Under Wyoming Law*

Mr. Harrell alleged that the defendants violated Wyoming criminal laws about mistreatment of institutionalized persons. The district court chose not to reach this claim because it was dismissing all federal claims and could decline to exercise supplemental jurisdiction over state-law claims. *See* 28 U.S.C. § 1367(c)(1).

On appeal, Mr. Harrell alleges the defendants could be liable in tort under the Wyoming Governmental Claims Act. But he did not attempt to allege a state tort claim in his amended complaint, and because he did not raise this argument before the district court, we do not reach it. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013)

---

[13] In his appeal brief, Mr. Harrell says NaphCare has since taken him off the FODMAP diet again. This allegation was not before the district court and, in any event, Mr. Harrell does not tell us how it affects the district court's conclusion that his claim for injunctive relief against the DOC is moot. We therefore do not consider it.

24

("Arguments that were not raised below are waived for purposes of appeal." (quotations omitted)).

## F. *Summary*

Mr. Harrell plausibly alleged deliberate indifference and retaliation against Dr. Scott, and deliberate indifference against Ms. Curry. We agree with the district court's dismissal of the remaining claims.

## III. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this order and judgment.[14]

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[14] We grant Mr. Harrell's motion to proceed without prepayment of costs or fees. We remind him he is required to continue making partial payments until the filing fee is paid in full.